**EXHIBIT "A"**

1  COREY W. GLAVE (State Bar No. 164746)
   Attorney at Law
2  1042 2nd Street
   Hermosa Beach, CA 90254
3  Phone: (310) 379-0065
   Fax: (310) 379-0456
4  Email: POAattorney@aol.com

5  Attorneys for Plaintiff
   Ivis Moran

FILED
LOS ANGELES SUPERIOR COURT

OCT 19 2015

SHERRI R. CARTER
EXECUTIVE OFFICER/CLERK
BY_____ DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES-NORTH CENTRAL DISTRICT

IVIS MORAN,

    Plaintiff/Petitioner,

vs.

CITY OF PASADENA, a municipal entity; MICHAEL BECK, in his official as City Manager and his individual capacity; PHILLIP SANCHEZ, in his official capacity as Chief of Police and in his individual capacity; and DOES 1 through 20, inclusive

    Defendants/Respondents.

Case No. EC064281  FILED BY FAX
Assigned for all purposes to
Judge Donna Fields Goldstein

FIRST AMENDED CIVIL COMPLAINT

1.  PETITION FOR WRIT OF MANDATE PURSUANT TO C.C.P. §1094.5
2.  RELIEF FOR VIOLATION OF POBRA, GOVERNMENT CODE §3309.5
3.  VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983

Request for Jury Trial

COMES NOW, PLAINTIFF/PETITIONER IVIS MORAN, and alleges as follows:

**VENUE AND JURISDICTION**

1. Venue is proper in the Superior Court of the State of California, for the County of Los Angeles in that the underlying acts, omissions, injuries and related facts and circumstances giving rise to the present action occurred in the City of Pasadena, County of Los Angeles, California. This Court has jurisdiction over the present matter because, as delineated within this complaint, the nature of the claims and amount in controversy meet the requirements of jurisdiction in the Superior Court and the Superior Court is given initial jurisdiction over at least some of the claims raised herein.

1

2. Plaintiff requests a jury trial on all non-mandamus relief.

3. Under Government Code §3309.5, Plaintiff need not exhausted all his/its administrative remedies, and therefore Plaintiff asserts that he has exhausted all administrative remedies required of him.

**PARTIES**

4. Plaintiff/Petitioner Ivis Moran, at all relevant time mentioned herein, unless otherwise stated, was employed as a full time sworn member of the City of Pasadena Police, holding the rank of police officer. As such, Moran was had a vested property right to continued employment that could not be taken away without due process of law. Moran also was entitled to all the rights and protections under the Public Safety Officers Procedural Bill of Rights Act. At all time relevant herein, Moran was a member of the Pasadena Police Officers Association. Moran was and is a resident of the State of California.

5. Defendant/Respondent, City of Pasadena (hereinafter "City") is and was a municipality duly organized and existing under the laws of the State of California. The Pasadena Police Department (hereinafter "Police Department") is an official subdivision of Defendant City, and all officers employed by said department are employees of Defendant City. The City, via state law, resolution, policy and/or past practice, has afforded sworn members of the Police Department with the rights as afforded to sworn peace officers under Government Code §3300, et seq.

6. Defendant, Michael Beck is the City Manager for the City of Pasadena, and is charged with the overall supervision and management of personnel, including personnel investigations and discipline of employees of the Pasadena Police Department. Plaintiff has information and belief that Beck participated, supervised and/or was actively involved in the incident giving rise to this Complaint.

7. Defendant, Phillip Sanchez is the Chief of Police for the City of Pasadena, Pasadena Police Department, and is charged with the supervision, management of personnel, including personnel investigations and discipline of

1 employees of the Pasadena Police Department. Plaintiff has information and belief that
2 Sanchez participated, supervised, directed and/or was actively involved in the incident
3 giving rise to this Complaint.

4 . 8. All of the acts complained of herein by Plaintiff against Defendants were
5 done and performed by said Defendants/Respondents by and through their authorized
6 agents, servants and/or employees, and each of them, all of whom at all relevant times
7 herein were acting within the course, purpose and scope of said agency, service and/or
8 employment capacity and/or in their individual capacity but purportedly within the
9 course, purpose and scope of said agency, service and/or employment capacity.
10 Moreover, Defendants/Respondents and their agents ratified all of the acts complained
11 of herein.

12 9. At all times herein mentioned, DOES 1-20, inclusive, were the agents,
13 servants and employees of Defendant City of Pasadena, Pasadena Police Department,
14 City Manager Beck and/or Chief of Police Sanchez, and in doing the things hereinafter
15 alleged, were acting within the scope of their authority as such agents, servants and
16 employees with the permission and consent of the other Defendants. Plaintiff will
17 amend the Complaint to allege true names and capacities of DOES 1-20, inclusive
18 when ascertained.

### FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS

20 10. On or about January 23, 2012, and after months of an on-and-off social
21 relationship with a female co-worker, the Pasadena Police Department received a false
22 complaint that Plaintiff had assaulted the female co-worker. The female co-worker,
23 who, in her brief career, had dated several Pasadena Police Officers and was engage
24 into another. Leading up to the consensual encounter between Plaintiff and the female
25 officer, the female officer repeated met with Plaintiff to engage in acts of intimacy and
26 then spent approximately eight hours texting back and forth with Plaintiff. These facts,
27 however, were omitted by the female officer when she was interviewed about her
28 complaint.

11. After receiving the complaint and interviewing the female officer, whose father was a Lieutenant with the Pasadena Police Department, both the Internal Affairs investigator and the criminal investigators interviewed the female officer. It would later be determined that the female officer deleted relevant text messages, and provided false information and/or inconsistent statements to the investigators, but she never faced any disciplinary actions for her conduct.

12. It is believed, and thereon alleged, that Chief Sanchez and his subordinates came to the conclusion, without any further investigation, that Plaintiff was guilty of a criminal act. Defendants initiated both an administrative investigation (commonly referred to as an Internal Affairs Investigation) and a concurrent criminal investigation of Plaintiff. The administrative investigator and the criminal investigator began working together and were sharing information; in essence, they joined forces to conduct a joint investigation.

13. A Lieutenant at the Police Department requested that Plaintiff appear to be interviewed about an incident between Plaintiff and the female officer. The two Investigators assigned to conduct a criminal investigation intentionally did not inform Plaintiff of the nature of their investigation and, in fact, falsely advise him that they did not know where the investigation was going, but it could be administrative in nature. Plaintiff specifically asked if the interview was part of a criminal investigation, and the Investigator purposely and intentionally misstated his knowledge and said "I don't know." Because he was requested to appear by a Lieutenant, and based on the false statements of the investigator, Plaintiff cooperated with the interview without legal representation.

14. On or about January 25, 2012, Plaintiff was notified that he was being placed on administrative leave until the conclusion of the Internal Affairs Investigation. The Notice of Administrative leave indicated potential policies that may have been violated, but did not state the nature of the investigation or what alleged misconduct gave rise to the potential policy violations. No additional notices regarding the nature of

the investigation were provided to Plaintiff prior to his administrative interrogation.

15. At the time of Plaintiff's first interview by members of the Pasadena Police Department, not only was he not informed of the nature of the investigation, but he was intentionally deceived about the nature of the investigation. Moreover, Plaintiff was not informed that he was under criminal investigation and/or advised of his constitutional rights. Nevertheless, Plaintiff provided the investigator with a truthful statement and evidence that the relationship and all contact with the female coworker was consensual.

16. During the criminal investigation and/or concurrent administrative investigation, the investigators did not recover, nor attempt to recover what is believed to have been exculpatory video evidence from both private and public video recordings. Additionally, the investigators allowed the female officer to personally redacted from obtained evidence information that may have provided additional exculpatory evidence for Plaintiff. It is also believed that the Defendants erased or destroyed recordings of interviews with the female officer and/or other witnesses.

17. After the criminal investigation was completed, it was sent to the City Prosecutor for review. The City Prosecutor refused to file any criminal charges as the behavior of the female officer leading up to the incident in question indicated a willingness to engage in a romantic liaison with Plaintiff.

18. Plaintiff was removed from administrative leave and placed back on active duty.

19. The criminal investigation was then provided to the Internal Affairs investigator. The investigator reviewed the entire criminal investigation and all statements gathered and then planned for her interview of Plaintiff.

20. Prior to his first Internal Affairs Interview, Plaintiff was not informed of the full nature and scope of the interview. While Defendants had provided Plaintiff with a list of policy sections that he may have violated back in January 2012, they did not at that time nor any time thereafter and prior to his interrogation indicate what behavior was alleged to have occurred that would be violative of the identified policies.

Moreover, Defendants are believed to have intentionally omitted from the information given to Plaintiff that he was under investigation for making false statements during the criminal investigation. These allegations and areas of questioning were known to the Internal Affairs investigator prior to Plaintiff's first interview.

21. After Plaintiff's internal affairs interrogation began, Plaintiff was informed, for the first time in either investigative interview, of his constitutional rights. Once advised of his rights, Plaintiff invoked his all of his constitutional rights.

22. The Internal Affairs Investigator questioned Plaintiff about his prior social relationship with the female officers, his private messages and discussion with the female officer going back three years, and about statements he had made to the Pasadena officer that conducted the criminal investigation. Ultimately, during this first administrative interview, the investigator, without providing notice that Plaintiff was under investigation for making false statements, asked questions about statements that the investigator thought were untrue based on the content of the criminal investigation.

23. On or about November 13, 2012, Plaintiff was interviewed a third time by Pasadena Police Department investigators; and the second time by the Internal Affairs Investigator. This time, after the interrogation began and the recorder was activated, Plaintiff was told that he was under investigation for making false statement during the first administrative interview.

24. Prior to the third interrogation, which was also the second or subsequent Internal Affairs interrogation, Plaintiff was provided with copies of his prior recorded interviews, but was not provided with the complaint or any of the reports required under Government Code §3303(g).

25. During the second Internal Affairs interview, the investigator re-asked the same questions about what Plaintiff has said to the criminal investigators.

26. As Defendants believed that they had obtained the necessary information to terminate Plaintiff's employment, he was again placed on administrative leave on or about December 13, 2012. Plaintiff was directed that he was not allowed to discuss the

administrative investigation with anyone and that he could not contact the witnesses interviewed in the case. This clearly inhibited Plaintiff from providing a defense to any administrative allegation of misconduct.

27. On an unknown date and time, Defendant Sanchez gathered his command staff and Internal Affairs Investigators to review the Internal Affairs Investigation. Chief Sanchez had his attorney, Hugh Halford, from the Pasadena City Attorney's office present. Based on knowingly false and misleading statements from the Internal Affairs investigators, Defendant Sanchez was able to make a final decision that he was going to terminate Plaintiff's employment.

28. On or about January 8, 2013, Plaintiff was served with a Notice of Proposed Discipline. The basis for the disciplinary action being proposed was the allegation of misconduct with the female officer, and the purportedly false statement to the criminal investigators (and then repeating the answers to the administrative investigator) which resulted from Plaintiff's interview where Defendants did not provide notice of the nature of the investigation prior to the interview (as referenced above). It is believed, and thereon alleged, that Plaintiff was not provided with all the documents that the proposed discipline was based on. Moreover, the "no contact" order was not withdrawn or revoked, thereby inhibiting Plaintiff's ability to present a defense.

29. On or about March 4, 2013, Plaintiff attended a faux *Skelly* hearing that was presided over by Chief Sanchez and his attorney, Hugh Halford, from the City Attorney's office. By the time of the *Skelly* hearing, Defendant Sanchez had already made his mind up and summarily dismissed Plaintiff's presentation. To Sanchez, any facts in the way of the goal to terminate Plaintiff were ignored, and, like the investigation, the results of the *Skelly* hearing were preordained. On or about March 19, 2013, Sanchez upheld Plaintiff's termination, but did not provide Plaintiff with notice of all the factual grounds for doing so.

30. It is believed that Defendant Sanchez used other charges, including, but not limited to Plaintiff with being a "Brady Officer" in violation of the law, and also for

COMPLAINT

undisclosed allegations of untruthfulness. Plaintiff was never put on notice of these allegations nor was he afforded the opportunity to address them prior to discipline being implemented.

31. On or about April 2, 2013, Plaintiff timely appealed the disciplinary action. At each stage of the grievance proceeding, Defendant Sanchez, or his designee, and a representative from the City Attorney's office reined over the proceedings.

32. In order to proceed with a neutral administrative appeal, the employee (or his representative) was required to pay a deposit to the City of Pasadena.

33. Finally, on or about March 14, 2014, Plaintiff, for the first time, was afforded the opportunity for an evidentiary hearing before a neutral Arbitrator. The Defendants were represented initially by Hugh Halford of the Pasadena City Attorney's office, and later, after Halford retired, by another representative of the City Attorney's office. Due to issues with the City's witnesses, including the female officer that initiated the complaint against Plaintiff, the hearing was not concluded until July 30, 2014. Thereafter the parties submitted closing brief; the City's brief was finally served on November 17, 2014.

34. On or about March 12, 2015, the Arbitrator issued his "Advisory Award." The Arbitrator reviewed the evidence, considered the live testimony from the witnesses, and was able, based on both on the content of and manner in which the testimony was provided, to make credibility determinations. The arbitrator found that the City did not meet its burden of proof that Plaintiff engaged in any of the charged misconduct with the female officer. The Arbitrator, in reviewing all the evidence, simply found Plaintiff to be the more credible witness based on the corroborating evidence.

35. The Arbitrator also concluded that the City did not meet its burden of proving that Moran lie to the criminal or the administrative investigators during his interrogations.

36. The Arbitrator also concluded that the Internal Affairs Investigator violated Plaintiff's rights under Government Code §3303 at the time of the March 16, 2012,

interrogation, and indicated that the criminal investigator's interview on February 25, 2012, also violated the law. Moreover, the Arbitrator found that the Notice of Intent to Discipline and the Notice of Discipline were inadequate; in essence, finding a due process violation.

37. The Arbitrator's advisory award recommends that the termination be set aside in its entirety, on its merits, given the City's failure to prove its case by a preponderance of the evidence, and that Plaintiff be reinstated with full back pay, seniority and benefits.

38. The applicable Memorandum of Understanding requires the Employee Relations Officer, here Defendant Beck, within twenty (20) calendar days following receipt of the advisory opinion, to advise the Union or the employee whether or not he/she intended to take any further action regarding the issue or issues referred to in the arbitrator's advisory opinion. No such notification was within 20 days following receipt of the advisory opinion issued in this case.

39. Defendant Beck, with legal advice from the City Attorney's office, then ignored the Arbitrator's Award and upheld the termination. Beck, however, did not follow the procedures established in the Memorandum of Understanding, and waived the right to take any action on the case other than to accept the Arbitrator's Advisory Award. Beck issued his decision on June 24, 2015, and served on counsel for the parties, but not on Plaintiff (therefore, no 90 day triggering under C.C.P. §1094.6 was effectuated).

40. On or about July 5, 2015, Plaintiff, via counsel sent by electronic mail and First Class Mail, a request pursuant to C.C.P. §1094.6©, for Defendant City to provide the complete record of the administrative appeal proceedings. As of the date of the filing of this Complaint, no such records have been provided.

///
///
///

## FIRST CAUSE OF ACTION

### Writ of Mandate Pursuant to C.C.P. §1094.5

### Moran vs City and City Manager

41. Plaintiff realleges each and every allegation contained in paragraphs 1 through 40 as though set forth fully herein

42. Code of Civil Procedure §1094.5 provides, in pertinent part, as follows:

"(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury. All or part of the record of the proceedings before the inferior tribunal, corporation, board, or officer may be filed with the petition, may be filed with respondent's points and authorities, or may be ordered to be filed by the court ...

(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence;

(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

43. In the matter at hand, the City Manager's "Decision Letter," issued or about, on or about June 24, 2015, finding that the disciplinary action against Plaintiff

was to be upheld (City has good cause) is not supported by the weight of the evidence, nor is the decision supported by substantial evidence. Furthermore, the decision is not supported by the findings. Plaintiff further contends that findings of the City Manager are not supported by the evidence.

44. In the matter at hand, the City Manager's "Decision Letter," issued or about, on or about June 24, 2015, finding that the City did not violate Plaintiff's right to due process is not supported by the weight of the evidence, nor is the decision supported by substantial evidence. Furthermore, the decision is not supported by the findings. Plaintiff further contends that findings of the City Manager are not supported by the evidence.

45. In the matter at hand, the City Manager's "Decision Letter," issued or about, on or about June 24, 2015, finding that the City did not violated Government Code §3300, et seq., is not supported by the weight of the evidence, nor is the decision supported by substantial evidence. Furthermore, the decision is not supported by the findings. Plaintiff further contends that findings of the City Manager are not supported by the evidence.

46. It is further alleged that the Defendant City and Defendant Beck proceeded without or in excess of its jurisdiction, there was prejudicial abuse of discretions, and Plaintiff has been denied due process of law and a fair hearing.

47. In fact, the evidence showed that Plaintiff's actions did not constitute misconduct and were not in violation of any policy or law.

48. The City Manager's written decisions fails to include factual findings on all necessary elements of the alleged offenses, and fails to include the analytical explanation of the facts and conclusions required by law.

49. Plaintiff seeks a Writ of Mandate overturning, revoking, and/or finding null and void the administrative decision. Plaintiff further seeks to mandamus relief to enforce the Arbitrator's award, including, the finding that the City did not meet its burden of proof on any allegation of misconduct, and vacating Plaintiff's termination.

COMPLAINT

50. Plaintiff seeks an award of all back wages, seniority benefits, and other fringe benefits, with interest, from the date of his termination to the date he is reinstated.

51. Plaintiff requests this court to award damages pursuant to C.C.P. §1090 and 1095.

52. The actions of defendants, and each of them, were arbitrary and capricious and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government Code §800.

53. The success of Plaintiffs in this action will result in the enforcement of an important right affecting the public interest in that a significant benefit will be conferred on a large class of persons, that is, public employees, and the necessity and financial burden of private enforcement of said benefit are such as to make appropriate the award of attorney fees pursuant to California Code of Civil Procedure §1021.5.

## SECOND CAUSE OF ACTION
## AGAINST CITY, SANCHEZ AND BECK
## VIOLATION OF POBRA

54. Plaintiff realleges each and every allegation contained in paragraphs 1 through 40 as though set forth fully herein

55. California Government Code §3303 provides that certain procedures and notices are mandated prior to any officer being interrogated by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action. These procedures include notifying the officer of the nature of the investigation, who will be present during the interrogation, the right to representation and, if criminal allegations are possible, the officer must be informed of his constitutional rights. (*City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506; *Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393).

56. In this case, on February 25, 2012, March 16, 2012, and November 13,

2012, Plaintiff was interviewed about matters that could lead to punitive action against him. He should have been afforded all his pre-interrogation rights, pursuant to Government Code §3303, but was not.

57. Plaintiff's interviews on March 16, 2012, and/or November 13, 2012, constitutes "further interrogation at a subsequent time." Government Code §3303(g) provides: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file."

58. The California Supreme Court found that subdivision (g) of section 3303 was included in the Act to further the notions of fundamental fairness for police officers. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 573). The Court further found that to harmonize subdivision (g) as a whole, then the provision should be interpreted as requiring that, as is the case with recordings and notes, reports and complaints be produced after first interrogation and that the Legislature must have intended the discovery rights in each instance to be coextensive. (*Pasadena Police officers Assn*, supra, at 576).

59. Prior to the further interrogation of Plaintiff at subsequent times, the City of Pasadena and/or the Pasadena Police Department had numerous reports, witness interviews, a formal complaint, photographs and other officers statements, but none of these materials were disclosed or provided to Plaintiff prior to his subsequent interrogations.

60. Plaintiff was served with a Notice of Proposed Discipline, which demonstrated that further proceedings were being contemplated. Plaintiff was not

provided all of the required documents under Government Code §3303(g) nor was he provided all the documents referenced in the Notice of Proposed Discipline.

61. There are set rules that establish the administrative appeal process for sworn peace officers with the City of Pasadena. Defendants, and each of them, did not comply with these rules, and thereby violated Government Code §3304.5.

62. Defendants, and their agents, employees, and/or representatives are believed to have intentionally and maliciously violated Plaintiff's rights under Government Code §3300, et seq., including, but not limited to Government Code §§3303, 3304 and 3309.5.

63. Plaintiff alleges that Defendants undertook the above actions in order to promote its/their/his wish to vex, annoy, or injure another person, or an intent to do a wrongful act. Defendants knew or should have known that by taking the above actions, the Plaintiff and/or his career in law enforcement would be harmed. Defendants are believed to have a history and pattern of violating officers rights under Government Code §3300, et seq.

64. As a direct result of Defendants' behavior, Plaintiff has and will continue to incurred harm, damages and attorney's fees in an effort to redress the damages which he/she/it has sustained as a result of said Defendants' outrageous behavior.

65. Defendants failed to comply with Government Code §3303, §3304 and/or §3304.5, and; therefore, violated Government Code §3309.5(a). As such, Plaintiffs are entitled to relief under Government Code §3309.5(d)(1), which provides "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

66. Ancillary and in addition to the extraordinary relief afforded by

Government Code §3309.5(d)(1), and to the extent the superior court finds that Defendants, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure Plaintiff, Plaintiff seeks an order that the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to Plaintiff and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by Plaintiff, Plaintiff seeks an ancillary order that the public safety department shall also be liable for the amount of the actual damages, as proven at trial or hearing on this matter.

67. Based on the actions of the Defendants, and each of them, Plaintiff has matters contained in his personnel/IA file and/or files used for personnel purposes and that are discoverable in civil and criminal actions, that are believed to be false and misleading. Plaintiff seeks an order of the court sealing said file(s) and/or ordering that said materials be purged.

68. The duty to obey the law in conducting internal affairs investigations and disciplinary appeals is a ministerial duty and is not discretionary. By acting, and failing to act, as set forth above, defendants have violated a ministerial duty. The court can issue an order directing the employer to act.

69. Each and every act listed above, individually or jointly, constitutes a violation of Government Code §3300, et seq., and therefore this court is required to render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, a preliminary injunction and a permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer. (Gov't Code §3309.5).

70. Plaintiff has no plain, speedy or adequate remedy under the law. Plaintiff has attempted to exhaust all administrative remedies to redress the violation of his